

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-10-00207-CV

## IN THE INTEREST OF T.C., A CHILD

_____

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 09-001558-CV-85

---

## MEMORANDUM  OPINION

---

Brandie's parental rights to T.C. were terminated after a trial before the court. *See* TEX. FAM. CODE ANN. Ch. 161 (Vernon Supp. 2010).  Brandie complains that the trial court erred by taking judicial notice without a copy of a transcript and that the evidence was legally and factually insufficient to sustain the trial court's determination that termination is in the child's best interest and that Brandie committed one of the predicate acts required for termination in section 161.001.  TEX. FAM. CODE ANN. § 161.001(1)(D) & (E) (Vernon Supp. 2010).  Because we find no error, we affirm the judgment of the trial court.

*Procedural History*

Brandie voluntarily placed T.C. with her mother in late 2007.  Shortly thereafter, T.C. went to live with Brandie's brother, Tony, and his wife, Leila, for about a month.

T.C. then went to live with Stephanie, a friend of Brandie's, for almost a year, when she went back to Brandie's brother and his wife's residence. The Department of Family and Protective Services became involved when T.C. left Brandie's care and Brandie was referred to Family Based Safety Services (FBSS). Each placement was pursuant to a safety plan agreed to by Brandie.

The last safety plan expired in early June of 2006; however, the Department did not feel that Brandie should regain possession of T.C. at that time. Brandie went to a visit at her brother's residence and while she and T.C. were playing outside on the front driveway, she took T.C. and left with her. The Department then filed this action seeking temporary managing conservatorship of T.C.

*Judicial Notice*

In her first issue, Brandie complains that the trial court erred by taking judicial notice of "all hearings and the orders issuing from those hearings which are required by law." During the bench trial, the Department asked the trial court to take judicial notice of "the entire file in this case which should include that plan of service." The trial court responded by stating that "I'll take judicial notice of whatever's in the file being in the file." However, the findings of fact and conclusions of law requested by the Department and signed by the trial court state that the trial court took judicial notice of "the entirety of its file" and "all hearings and the orders issuing from those hearings which are required by law."

At the time the Department made its request, Brandie did not object to the taking of judicial notice or attempt to limit what the court was taking judicial notice of until

she raised her complaint in her motion for new trial and points of error on appeal. In order to preserve error for appeal, it is necessary to make a timely objection. TEX. R. APP. P. 33.1. Failure to do so waives any objection on appeal. Because Brandie did not object at the time that the trial court took judicial notice, she has waived this complaint. We overrule issue one.

*Termination of Parental Rights*

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the petitioner seeks not just to limit parental rights but to eradicate them permanently by divesting the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (Vernon 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick* at 20-21.

*Burden of Proof*

In this proceeding to terminate the parent-child relationship brought under

section 161.001 of the Family Code, the Department was required to establish one ground listed under subdivision (1) of the statute and to prove that termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. §§ 161.001, 161.206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007 (Vernon 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

### *Legal and Factual Sufficiency*

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment and assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id*. We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id*. We must

consider, however, undisputed evidence even if it is contrary to the finding. *Id.*

It is necessary to consider all of the evidence, not just that which favors the verdict. *J.P.B.*, 180 S.W.3d at 573. However, we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the fact-finder's province. *Id.* at 573-74. And even when credibility issues appear in the appellate record, we must defer to the fact-finder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the fact-finder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

*Sufficiency of Endangerment Findings*

In issues three and four, Brandie argues that the evidence is legally and factually insufficient to support the trial court's Family Code Section 161.001(1)(D) and (E) endangerment findings.

Endangerment means to expose to loss or injury, to jeopardize. *See Texas Dep't of*

*Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).

Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *D.T.*, 34 S.W.3d at 634. To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury. *Boyd*, 727 S.W.2d at 533. The specific danger to the child's well-being may be inferred from parental misconduct alone; and to determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth. *Id.*; *In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).

Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). A parent's mental state may be considered in determining whether a child is endangered particularly if that mental state results in the parent engaging in conduct that jeopardizes the physical or emotional well-being of the child. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.);

*see also In re C.M.B.*, 204 S.W.3d 886, 895 (Tex. App.—Dallas 2006, pet. denied). A parent's mental instability and attempt to commit suicide may contribute to a finding that the parent engaged in a course of conduct that endangered a child's physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.)*; see In re A.M.C.*, 2 S.W.3d 707, 716 (Tex. App.—Waco 1999, no pet.) (upholding jury's determination of endangerment where evidence showed mother's suicidal thoughts, suicide attempts, and neglect); *see also In re C.D.*, 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 1984, no writ) (mental conditions and suicide attempts of parent were factors in considering whether parent engaged in conduct that endangered emotional well-being of child).

Brandie has lived an unstable, transient lifestyle that indicates a pattern of engaging in conduct that would endanger T.C. emotionally and physically. *See Director of Dallas County Child Protective Services Unit of Dep't of Human Services v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no writ) (conduct does not have to occur in presence of child and can be considered even if child living elsewhere at time of events). From the time of T.C.'s birth until the final hearing, Brandie had lived in approximately 15 separate locations, admitted to being suicidal prior to placing T.C. with her mother, and had told the psychologist that conducted her psychological evaluation that she had 38 sexual partners prior to the Department seeking conservatorship of T.C. and had exposed T.C. to many of her paramours. Brandie had accused at least one of her paramours that she lived with of sexually and physically harming T.C., although she contended that those allegations were false. Brandie had tended to minimize and

understate the severity of her mental health issues and was not consistently on medication when she was not pregnant although she had been diagnosed as being bipolar in the psychological evaluation. Brandie's initial therapist had also diagnosed her with borderline personality disorder.

However, in the months prior to the final hearing, Brandie had actively participated in therapy, completed her parenting classes, had her own residence, was working, and was taking medication to treat her bipolar condition.

Endangering conduct is not limited to actions directed toward the child. *See In re J.I.T.P.*, 99 S.W.3d at 844 (endangering acts need not be directed at or actually cause injury to child). The trial court could reasonably determine that Brandie's long-standing unwillingness to address her mental health issues, her lack of self-control regarding her multiple sexual partners, and transient lifestyle would endanger T.C. *See id*. at 845 (holding trial court could have considered mother's desire to hurt herself and her history of noncompliance with her medication schedule as factors endangering child); *In re N.S.G.*, 235 S.W.3d at 358, 367 (Tex. App.—Texarkana 2007, no pet.) (noting that if evidence shows course of conduct which has effect of endangering physical or emotional well-being of child, finding under section E is supportable); *see also In re J.J.S.*, 272 S.W.3d at 78 (requiring course of conduct under section E).

Although there are relatively recent developments that show improvements in Brandie's condition and stability, the trial court could reasonably determine any evidence of improvement was short-lived and outweighed by the extent of her prior history. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) (deferring to trial court to weigh

evidence of significant recent improvements, especially of short duration, against probative value of irresponsible choices). Based on Brandie's past conduct, the trial court could reasonably infer that if T.C. lived with her at some point in the future, her instability would physically and emotionally endanger T.C. by giving T.C. a life of uncertainty. *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 824 (Tex. App.—Fort Worth 2007, no pet.); *see In re M.G.M.*, 163 S.W.3d 191, 202 (Tex. App.—Beaumont 2005, no pet.).

Viewing all the evidence in the light most favorable to the judgment, we hold that a fact-finder could reasonably have formed a firm belief or conviction that Brandie engaged in conduct that endangered the physical and emotional well-being of T.C. *See* TEX. FAM. CODE ANN. § 161.001(1)(E). The evidence is thus legally sufficient to support the trial court's termination findings under section E. *See In re J.I.T.P.*, 99 S.W.3d at 845.

Additionally, viewing the evidence as a whole, we hold that a rational trier of fact could have reasonably formed a firm belief or conviction that Brandie engaged in conduct that endangered the physical and emotional well-being of T.C. *See* TEX. FAM. CODE ANN. § 161.001(1)(E). Thus, the evidence is factually sufficient to support the trial court's termination findings under section E. *See In re J.I.T.P.*, 99 S.W.3d at 845.

Because it is only necessary that the evidence was legally and factually sufficient as to one predicate act under section 161.001(1), we will not address the sufficiency of the evidence relating to section 161.001(1)(D). *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We overrule issues three and four.

*Sufficiency of Best Interest Finding*

In her second issue, Brandie argues that the evidence is legally and factually insufficient to support the trial court's finding that it was in T.C.'s best interest to terminate the parent-child relationship. There are several nonexclusive factors that the trier of fact in a termination case may consider in determining the best interest of the child, which include (a) the desires of the child, (b) the emotional and physical needs of the child now and in the future, (c) the emotional and physical danger to the child now and in the future, (d) the parental abilities of the individuals seeking custody, (e) the programs available to assist these individuals to promote the best interest of the child, (f) the plans for the child by these or by the agency seeking custody, (g) the stability of the home or proposed placement, (h) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (i) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id*. On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id*.

*Desires of the Child*

T.C. had expressed a desire to return to her mother's home and there was no

evidence that she was afraid to return to her mother's custody. When T.C. asked about going home, Leila told her that her mother had work to do first. T.C. then believed that she would go home when her mother finished her "paperwork." T.C. and Brandie did share a bond with each other, which was apparent to the child's counselor, the attorney ad litem, the guardian ad litem, and Brandie's therapist. T.C. expressed a desire to visit with Brandie and was sad when the visits ended.

*Emotional and Physical Needs and Danger Now and in the Future*

T.C. was almost three years old when she was initially placed apart from Brandie. At such a young age, T.C. was physically and emotionally vulnerable to Brandie's issues, and the emotional harm to T.C. was demonstrated by her behavioral problems at each of her placements.

While living with Tony and Leila, T.C. had been in play therapy due to her behavior and had replicated events that support an inference that she had been locked up away from her mother and her paramours. This was confirmed by the testimony of one of her boyfriends, who stated that on one occasion, Brandie locked T.C. in her bedroom while he and Brandie had sex in the living room and then went outside together. T.C. was not asleep during this time and when they came back inside, T.C. was crying uncontrollably in the arms of the man with whom Brandie was living at that time.

Brandie minimized T.C.'s behavioral difficulties and denied that T.C. had any problems, even though T.C. would be exceptionally clingy at times, refused to sleep with a closed door, cried to the point of throwing up at night, and threw tantrums daily

by throwing herself on the ground, screaming and wailing, and hitting herself. These behaviors were worse after Brandie's monthly visits after the Department gained managing conservatorship of T.C.

*Parental Abilities of the Individuals Seeking Custody*

Tony and Leila were willing to adopt T.C. T.C. was bonded with Tony and Leila's other three children in the home. However, due to the prior difficulties and the relationship that existed at the time of the final hearing with Brandie, they were unwilling to agree to merely having custody of T.C. and would not keep her if Brandie's rights were not terminated. Tony and Leila could provide a stable, loving home for T.C. They had sought assistance for T.C.'s behavioral issues of their own accord and there was no indication that there were any deficiencies in their parenting abilities or home environment.

Conversely, Brandie did not indicate that she was seeking custody at the time of the final hearing other than to state "I want her home." While the attorney ad litem and the guardian ad litem for the child both testified that termination was not in the best interest of T.C., they did not have a firm timeframe for when T.C. might be returned to Brandie and were asking that the Department be named T.C.'s permanent managing conservator at that time. Brandie's counselor likewise did not have a timeframe for a return to Brandie.

*Programs Available to Assist Individuals*

There was no evidence regarding programs available to assist either Tony and Leila or Brandie. This factor does not weigh in favor or against termination.

*Plans for the Child by Those Seeking Custody*

Tony and Leila planned to adopt T.C. and make her a part of their family. Alternatively, there was no evidence of the provisions Brandie had made for T.C. or her plans for the future if T.C. were returned to her home.

*Stability of the Home or Proposed Placement*

The home of Tony and Leila was a stable placement. Tony and Leila had been married for twelve years at the time of the final hearing. They had lived in their home for approximately four years and T.C. had her own room. Tony had a stable job and Leila was a stay at home parent. Tony and Leila had three children at the time of the final hearing. T.C. had a strong bond with those children and Tony and Leila. T.C. was allowed to call Tony and Leila whatever she wanted to and she chose to call them "mom and dad."

Alternatively, Brandie had resided in approximately fifteen residences since T.C.'s birth with different men and relatives at different times.

*Acts or Omissions of the Parent*

Brandie's constant changing residences, relationships with men who were bad for Brandie, and mental illness resulted in T.C.'s placement outside of the home. Initially, Brandie believed that she did not need to change and did not agree with what her first counselor attempted to counsel her about during the time she was involved with FBSS and even for the first few months of this case.

After T.C. had been out of her home for almost two years, Brandie did finally begin to make progress in counseling with a second counselor and after the birth of her

second child began taking medication to address her bipolar condition. She began addressing her history and issues with men and relationships. Brandie was employed throughout the pendency of the case with the exception of a short time leading up to and after the birth of her second child. Brandie was living in her own apartment at the time of the final hearing and had been independent for several months when her rights were terminated. She completed her parenting classes, attended her counseling, and eventually did everything the Department asked her to do pursuant to her service plan.

*Any Excuse for the Acts or Omissions of the Parent*

There is no evidence of any excuses for any of Brandie's acts or omissions other than her mental illness, which Brandie did not acknowledge or deal with until the months prior to the final hearing in this case.

*Application*

In this case, we believe that the best interest of T.C. was best determined by the trial court based on the demeanor and credibility of each of the witnesses. It is also significant that Brandie was not seeking custody at the time of the final hearing and based on the testimony of the experts, it could have been a long time before that could occur. By enacting the deadlines that exist in cases where the Department has conservatorship of children, the Legislature has demonstrated its intent to achieve permanence for children as promptly as possible. This is because "the need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ). Allowing T.C. to languish in the Department's

custody until Brandie adequately deals with her issues and mental illness, if and when that might be, would do nothing to achieve that goal.

We agree that termination decisions cannot be used to reallocate children "to better and more prosperous parents." *See In the Interest of W.C.*, 98 S.W.3d 753, 758 (Tex. App.—Fort Worth 2003, no pet.). However, we do not find that this is the situation presented here. Although the evidence showed Brandie has made relatively recent improvements to her past situation, those improvements cannot absolve her of her long history of irresponsible choices. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) ("While the recent improvements made by [appellant] are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices.").

In light of all the evidence, we find that the trial court could have reasonably formed a firm belief or conviction that termination of Brandie's parental rights was in T.C.'s best interest. Accordingly, we hold the evidence is both legally and factually sufficient to support the trial court's finding that termination of Brandie's parental rights was in the best interest of T.C. We overrule issue two.

*Conclusion*

We find that Brandie's complaint regarding the taking of judicial notice was not preserved. We find that the evidence was legally and factually sufficient for the trial court to have found that Brandie engaged in conduct that endangered the physical and emotional well-being of T.C. and that the termination of the parent-child relationship between Brandie and T.C. was in T.C.'s best interest. We affirm the judgment of the

trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed December 1, 2010
[CV06]