IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00207-CV

 

In the
Interest of T.C., A Child

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 09-001558-CV-85

 



MEMORANDUM  Opinion










 

            Brandie’s parental rights to T.C. were
terminated after a trial before the court.  See Tex. Fam. Code Ann. Ch. 161 (Vernon Supp. 2010).  Brandie
complains that the trial court erred by taking judicial notice without a copy
of a transcript and that the evidence was legally and factually insufficient to
sustain the trial court’s determination that termination is in the child’s best
interest and that Brandie committed one of the predicate acts required for
termination in section 161.001.  Tex.
Fam. Code Ann. § 161.001(1)(D) & (E) (Vernon Supp. 2010).  Because
we find no error, we affirm the judgment of the trial court.

Procedural History

            Brandie voluntarily placed T.C. with her mother in late 2007. 
Shortly thereafter, T.C. went to live with Brandie’s brother, Tony, and his
wife, Leila, for about a month.  T.C. then went to live with Stephanie, a
friend of Brandie’s, for almost a year, when she went back to Brandie’s brother
and his wife’s residence.  The Department of Family and Protective Services
became involved when T.C. left Brandie’s care and Brandie was referred to
Family Based Safety Services (FBSS).  Each placement was pursuant to a safety
plan agreed to by Brandie.  

            The last safety plan expired in early
June of 2006; however, the Department did not feel that Brandie should regain
possession of T.C. at that time.  Brandie went to a visit at her brother’s
residence and while she and T.C. were playing outside on the front driveway,
she took T.C. and left with her.  The Department then filed this action seeking
temporary managing conservatorship of T.C.

Judicial Notice

              In her first issue, Brandie
complains that the trial court erred by taking judicial notice of “all hearings
and the orders issuing from those hearings which are required by law.”  During
the bench trial, the Department asked the trial court to take judicial notice
of “the entire file in this case which should include that plan of service.” 
The trial court responded by stating that “I’ll take judicial notice of
whatever’s in the file being in the file.”  However, the findings of fact and
conclusions of law requested by the Department and signed by the trial court
state that the trial court took judicial notice of “the entirety of its file”
and “all hearings and the orders issuing from those hearings which are required
by law.”

            At the time the Department made its
request, Brandie did not object to the taking of judicial notice or attempt to
limit what the court was taking judicial notice of until she raised her
complaint in her motion for new trial and points of error on appeal.  In order
to preserve error for appeal, it is necessary to make a timely objection.  Tex. R. App. P. 33.1.  Failure to do so
waives any objection on appeal.  Because Brandie did not object at the time
that the trial court took judicial notice, she has waived this complaint.  We
overrule issue one.

Termination of Parental Rights

A parent’s rights to “the companionship, care,
custody, and management” of his or her children are constitutional interests
“far more precious than any property right.”  Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982); In re M.S., 115 S.W.3d 534,
547 (Tex. 2003).  “While parental rights are of constitutional magnitude, they
are not absolute.  Just as it is imperative for courts to recognize the
constitutional underpinnings of the parent-child relationship, it is also
essential that emotional and physical interests of the child not be sacrificed
merely to preserve that right.”  In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).  In a termination case, the petitioner seeks not just to limit parental rights
but to eradicate them permanently by divesting the parent and child of all
legal rights, privileges, duties, and powers normally existing between them,
except for the child’s right to inherit.  Tex.
Fam. Code Ann. § 161.206(b) (Vernon 2008); Holick v. Smith, 685
S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings and
strictly construe involuntary termination statutes in favor of the parent.  Holick
at 20-21.

Burden of Proof

In this proceeding to terminate the parent-child
relationship brought under section 161.001 of the Family Code, the Department
was required to establish one ground listed under subdivision (1) of the
statute and to prove that termination was in the best interest of the child.  Tex. Fam. Code Ann. § 161.001; In re
J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be
established; termination may not be based solely on the best interest of the
child as determined by the trier of fact.  Tex. Dep’t of Human Servs.
v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must
be supported by clear and convincing evidence.  Tex. Fam. Code Ann. §§ 161.001, 161.206(a).  Evidence is
clear and convincing if it “will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be
established.”  Id. § 101.007 (Vernon 2008).  Due process demands this
heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J., 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards
for termination and modification).

Legal and Factual Sufficiency

In reviewing the evidence for legal sufficiency in
parental termination cases, we must determine whether the evidence is such that
a factfinder could reasonably form a firm belief or conviction that the grounds
for termination were proven.  In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We must review all the evidence in the light most favorable to the finding and
judgment and assume that the factfinder resolved any disputed facts in favor of
its finding if a reasonable factfinder could have done so.  Id.  We must
also disregard all evidence that a reasonable factfinder could have
disbelieved.  Id.  We must consider, however, undisputed evidence even
if it is contrary to the finding.  Id. 

It is necessary to consider all of the evidence,
not just that which favors the verdict.  J.P.B., 180 S.W.3d at 573. 
However, we cannot weigh witness credibility issues that depend on the
appearance and demeanor of the witnesses, for that is the fact-finder’s
province.  Id. at 573-74.  And even when credibility issues appear in
the appellate record, we must defer to the fact-finder’s determinations as long
as they are not unreasonable.  Id. at 573.

In reviewing the evidence
for factual sufficiency, we must give due deference to the fact-finder’s
findings and not supplant the judgment with our own.  In re H.R.M., 209
S.W.3d 105, 108 (Tex. 2006).  We must determine whether, on the entire record,
a fact-finder could reasonably form a firm conviction or belief that the parent
violated the relevant conduct provisions of section 161.001(1) and that the
termination of the parent-child relationship would be in the best interest of
the child.  C.H., 89 S.W.3d at 28.  If, in light of the entire record,
the disputed evidence that a reasonable fact-finder could not have credited in
favor of the finding is so significant that a factfinder could not reasonably
have formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  H.R.M., 209 S.W.3d at 108.

Sufficiency of Endangerment Findings

In issues three and four, Brandie argues that the
evidence is legally and factually insufficient to support the trial court’s
Family Code Section 161.001(1)(D) and (E) endangerment findings.

Endangerment means to
expose to loss or injury, to jeopardize.  See Texas Dep’t of Human Services
v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).  The trial
court may order termination of the parent-child relationship if it finds by
clear and convincing evidence that the parent has engaged in conduct or
knowingly placed the child with persons who engaged in conduct that endangers
the physical or emotional well-being of the child.  Tex. Fam. Code Ann. § 161.001(1)(E).  Under subsection (E),
the relevant inquiry is whether evidence exists that the endangerment of the
child’s physical or emotional well-being was the direct result of the parent’s
conduct, including acts, omissions, and failures to act.  In re J.T.G.,
121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).  

Termination under subsection (E) must be based on
more than a single act or omission; a voluntary, deliberate, and conscious
course of conduct by the parent is required.  Id.; D.T., 34
S.W.3d at 634.  To support a finding of endangerment, the
parent’s conduct does not necessarily have to be directed at the child, and the
child is not required to suffer injury.  Boyd, 727 S.W.2d at 533.  The
specific danger to the child’s well-being may be inferred from parental
misconduct alone; and to determine whether termination is necessary, courts may
look to parental conduct both before and after the child’s birth.  Id.; In re D.M., 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).

Conduct that subjects a child to a life of
uncertainty and instability endangers the child’s physical and emotional
well-being.  In re S.D., 980 S.W.2d 758, 763 (Tex. App.—San Antonio
1998, pet. denied).  A parent’s mental state may be considered in determining
whether a child is endangered particularly if that mental state results in the
parent engaging in conduct that jeopardizes the physical or emotional
well-being of the child.  In re J.I.T.P., 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.); see also In re C.M.B., 204 S.W.3d 886, 895
(Tex. App.—Dallas 2006, pet. denied).  A parent’s mental instability and
attempt to commit suicide may contribute to a finding that the parent engaged
in a course of conduct that endangered a child’s physical or emotional
well-being.  In re J.T.G., 121 S.W.3d 117, 126 (Tex. App.—Fort Worth
2003, no pet.); see In re A.M.C., 2 S.W.3d 707, 716 (Tex. App.—Waco
1999, no pet.) (upholding jury’s determination of endangerment where evidence
showed mother’s suicidal thoughts, suicide attempts, and neglect); see also
In re C.D., 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 1984, no writ)
(mental conditions and suicide attempts of parent were factors in considering
whether parent engaged in conduct that endangered emotional well-being of
child).

Brandie has lived an unstable, transient lifestyle
that indicates a pattern of engaging in conduct that would endanger T.C.
emotionally and physically.  See Director of Dallas County Child Protective
Services Unit of Dep't of Human Services v. Bowling, 833 S.W.2d 730, 733
(Tex. App.—Dallas 1992, no writ) (conduct does not have to occur in presence of
child and can be considered even if child living elsewhere at time of events). 
From the time of T.C.’s birth until the final hearing, Brandie had lived in
approximately 15 separate locations, admitted to being suicidal prior to
placing T.C. with her mother, and had told the psychologist that conducted her
psychological evaluation that she had 38 sexual partners prior to the
Department seeking conservatorship of T.C. and had exposed T.C. to many of her
paramours.  Brandie had accused at least one of her paramours that she lived
with of sexually and physically harming T.C., although she contended that those
allegations were false.  Brandie had tended to minimize and understate the
severity of her mental health issues and was not consistently on medication
when she was not pregnant although she had been diagnosed as being bipolar in
the psychological evaluation.  Brandie’s initial therapist had also diagnosed
her with borderline personality disorder.  

However, in the months prior to the final hearing,
Brandie had actively participated in therapy, completed her parenting classes,
had her own residence, was working, and was taking medication to treat her
bipolar condition.

Endangering conduct is not limited to actions
directed toward the child.  See In re J.I.T.P., 99 S.W.3d at 844
(endangering acts need not be directed at or actually cause injury to child). 
The trial court could reasonably determine that Brandie’s long-standing
unwillingness to address her mental health issues, her lack of self-control
regarding her multiple sexual partners, and transient lifestyle would endanger
T.C.  See id. at 845 (holding trial court could have considered mother’s
desire to hurt herself and her history of noncompliance with her medication
schedule as factors endangering child); In re N.S.G., 235 S.W.3d at 358,
367 (Tex. App.—Texarkana 2007, no pet.) (noting that if evidence shows course
of conduct which has effect of endangering physical or emotional well-being of
child, finding under section E is supportable); see also In re J.J.S.,
272 S.W.3d at 78 (requiring course of conduct under section E).

Although there are relatively recent developments
that show improvements in Brandie’s condition and stability, the trial court
could reasonably determine any evidence of improvement was short-lived and
outweighed by the extent of her prior history.  See In re J.O.A., 283
S.W.3d 336, 346 (Tex. 2009) (deferring to trial court to weigh evidence of
significant recent improvements, especially of short duration, against
probative value of irresponsible choices).  Based on Brandie’s past conduct,
the trial court could reasonably infer that if T.C. lived with her at some
point in the future, her instability would physically and emotionally endanger
T.C. by giving T.C. a life of uncertainty.  Schaban-Maurer v. Maurer-Schaban,
238 S.W.3d 815, 824 (Tex. App.—Fort Worth 2007, no pet.); see In re M.G.M.,
163 S.W.3d 191, 202 (Tex. App.—Beaumont 2005, no pet.).

Viewing all the evidence in the light most
favorable to the judgment, we hold that a fact-finder could reasonably have
formed a firm belief or conviction that Brandie engaged in conduct that
endangered the physical and emotional well-being of T.C.  See Tex. Fam. Code Ann. § 161.001(1)(E). 
The evidence is thus legally sufficient to support the trial court’s
termination findings under section E. See In re J.I.T.P., 99 S.W.3d at
845.

Additionally, viewing the evidence as a whole, we
hold that a rational trier of fact could have reasonably formed a firm belief
or conviction that Brandie engaged in conduct that endangered the physical and
emotional well-being of T.C.  See Tex.
Fam. Code Ann. § 161.001(1)(E).  Thus, the evidence is factually
sufficient to support the trial court’s termination findings under section E.  See
In re J.I.T.P., 99 S.W.3d at 845.

Because it is only necessary that the evidence was
legally and factually sufficient as to one predicate act under section
161.001(1), we will not address the sufficiency of the evidence relating to
section 161.001(1)(D).  In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).  We overrule issues three and four.  

 

Sufficiency of Best Interest Finding

In her second issue, Brandie argues that the
evidence is legally and factually insufficient to support the trial court’s
finding that it was in T.C.’s best interest to terminate the parent-child
relationship.  There
are several nonexclusive factors that the trier of fact in a termination case
may consider in determining the best interest of the child, which include (a)
the desires of the child, (b) the emotional and physical needs of the child now
and in the future, (c) the emotional and physical danger to the child now and
in the future, (d) the parental abilities of the individuals seeking custody,
(e) the programs available to assist these individuals to promote the best
interest of the child, (f) the plans for the child by these or by the agency
seeking custody, (g) the stability of the home or proposed placement, (h) the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one, and (i) any excuse for the acts
or omissions of the parent.  Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).

These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate.  C.H., 89 S.W.3d at 27. 
Furthermore, undisputed evidence of just one factor may be sufficient in a
particular case to support a finding that termination is in the best interest
of the child.  Id. On the other hand, the presence of scant evidence
relevant to each factor will not support such a finding.  Id.

Desires of the Child

T.C. had expressed a desire to return to her
mother’s home and there was no evidence that she was afraid to return to her
mother’s custody.  When T.C. asked about going home, Leila told her that her
mother had work to do first.  T.C. then believed that she would go home when
her mother finished her “paperwork.”  T.C. and Brandie did share a bond with
each other, which was apparent to the child’s counselor, the attorney ad litem,
the guardian ad litem, and Brandie’s therapist.  T.C. expressed a desire to
visit with Brandie and was sad when the visits ended.  

Emotional and Physical Needs and Danger Now and in
the Future

            T.C. was almost three years old when she was initially placed apart
from Brandie.  At such a young age, T.C. was physically and emotionally vulnerable
to Brandie’s issues, and the emotional harm to T.C. was demonstrated by her
behavioral problems at each of her placements.

While living with Tony and Leila, T.C. had been in
play therapy due to her behavior and had replicated events that support an inference
that she had been locked up away from her mother and her paramours.  This was
confirmed by the testimony of one of her boyfriends, who stated that on one
occasion, Brandie locked T.C. in her bedroom while he and Brandie had sex in
the living room and then went outside together.  T.C. was not asleep during
this time and when they came back inside, T.C. was crying uncontrollably in the
arms of the man with whom Brandie was living at that time.  

Brandie minimized T.C.’s behavioral difficulties
and denied that T.C. had any problems, even though T.C. would be exceptionally
clingy at times, refused to sleep with a closed door, cried to the point of
throwing up at night, and threw tantrums daily by throwing herself on the
ground, screaming and wailing, and hitting herself.  These behaviors were worse
after Brandie’s monthly visits after the Department gained managing
conservatorship of T.C.

Parental Abilities of the Individuals Seeking
Custody

Tony and Leila were willing to adopt T.C.  T.C.
was bonded with Tony and Leila’s other three children in the home.  However,
due to the prior difficulties and the relationship that existed at the time of
the final hearing with Brandie, they were unwilling to agree to merely having
custody of T.C. and would not keep her if Brandie’s rights were not
terminated.  Tony and Leila could provide a stable, loving home for T.C.  They
had sought assistance for T.C.’s behavioral issues of their own accord and
there was no indication that there were any deficiencies in their parenting
abilities or home environment.

Conversely, Brandie did not indicate that she was
seeking custody at the time of the final hearing other than to state “I want
her home.”  While the attorney ad litem and the guardian ad litem for the child
both testified that termination was not in the best interest of T.C., they did
not have a firm timeframe for when T.C. might be returned to Brandie and were
asking that the Department be named T.C.’s permanent managing conservator at
that time.  Brandie’s counselor likewise did not have a timeframe for a return
to Brandie.  

Programs Available to Assist Individuals

            There was no evidence regarding
programs available to assist either Tony and Leila or Brandie.  This factor
does not weigh in favor or against termination.

Plans for the Child by Those Seeking Custody

Tony and Leila planned to adopt T.C. and make her
a part of their family.  Alternatively, there was no evidence of the provisions
Brandie had made for T.C. or her plans for the future if T.C. were returned to
her home.  

Stability of the Home or Proposed Placement

            The home of Tony and Leila was a
stable placement.  Tony and Leila had been married for twelve years at the time
of the final hearing.  They had lived in their home for approximately four
years and T.C. had her own room.  Tony had a stable job and Leila was a stay at
home parent.  Tony and Leila had three children at the time of the final
hearing.  T.C. had a strong bond with those children and Tony and Leila.  T.C.
was allowed to call Tony and Leila whatever she wanted to and she chose to call
them “mom and dad.”

            Alternatively, Brandie had resided in
approximately fifteen residences since T.C.’s birth with different men and
relatives at different times.     

Acts or Omissions of the Parent

            Brandie’s constant changing
residences, relationships with men who were bad for Brandie, and mental illness
resulted in T.C.’s placement outside of the home.  Initially, Brandie believed
that she did not need to change and did not agree with what her first counselor
attempted to counsel her about during the time she was involved with FBSS and
even for the first few months of this case.  

After T.C. had been out of her home for almost two
years, Brandie did finally begin to make progress in counseling with a second
counselor and after the birth of her second child began taking medication to
address her bipolar condition.  She began addressing her history and issues
with men and relationships.  Brandie was employed throughout the pendency of
the case with the exception of a short time leading up to and after the birth
of her second child.  Brandie was living in her own apartment at the time of
the final hearing and had been independent for several months when her rights
were terminated.  She completed her parenting classes, attended her counseling,
and eventually did everything the Department asked her to do pursuant to her
service plan.

Any Excuse for the Acts or Omissions of the Parent

There is no evidence of any excuses for any of
Brandie’s acts or omissions other than her mental illness, which Brandie did
not acknowledge or deal with until the months prior to the final hearing in
this case.

Application

In this case, we believe that the best interest of
T.C. was best determined by the trial court based on the demeanor and credibility
of each of the witnesses.  It is also significant that Brandie was not seeking
custody at the time of the final hearing and based on the testimony of the
experts, it could have been a long time before that could occur.  By enacting
the deadlines that exist in cases where the Department has conservatorship of
children, the Legislature has demonstrated its intent to achieve permanence for
children as promptly as possible.  This is because “the need for permanence is
the paramount consideration for the child’s present and future physical and
emotional needs.”  Dupree v. Texas Dep’t of Protective & Regulatory
Servs., 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ). 
Allowing T.C. to languish in the Department’s custody until Brandie adequately
deals with her issues and mental illness, if and when that might be, would do
nothing to achieve that goal.

We agree that termination decisions cannot be used
to reallocate children “to better and more prosperous parents.”  See In the
Interest of W.C., 98 S.W.3d 753, 758 (Tex. App.—Fort Worth 2003, no pet.). 
However, we do not find that this is the situation presented here.  Although
the evidence showed Brandie has made relatively recent improvements to her past
situation, those improvements cannot absolve her of her long history of
irresponsible choices.  See In re J.O.A., 283 S.W.3d 336, 346 (Tex.
2009) (“While the recent improvements made by [appellant] are significant,
evidence of improved conduct, especially of short-duration, does not
conclusively negate the probative value of a long history of . . .
irresponsible choices.”).

In light of all the evidence, we find that the
trial court could have reasonably formed a firm belief or conviction that
termination of Brandie’s parental rights was in T.C.’s best interest. 
Accordingly, we hold the evidence is both legally and factually sufficient to
support the trial court’s finding that termination of Brandie’s parental rights
was in the best interest of T.C.  We overrule issue two.

Conclusion

            We find that Brandie’s complaint
regarding the taking of judicial notice was not preserved.  We find that the
evidence was legally and factually sufficient for the trial court to have found
that Brandie engaged in conduct that endangered the physical and emotional
well-being of T.C. and that the termination of the parent-child relationship
between Brandie and T.C. was in T.C.’s best interest.  We affirm the judgment
of the trial court.

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

Affirmed

Opinion delivered and
filed December 1, 2010

[CV06]