**In the Interest of C.D., A Child.**

No. 2–83–097–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 1, 1984.

Thomas L.G. Ross, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and David H. Montague, Asst. Dist. Atty., Fort Worth, for appellee.

Before HUGHES, ASHWORTH and SPURLOCK, JJ.

## OPINION

HUGHES, Justice.

The Texas Department of Human Resources and Tarrant County Child Welfare instituted this action under TEX.FAM. CODE ANN. sec. 15.02 (Vernon Supp. 1982–1983) against the natural mother of C.D. to terminate her parental rights. The child was four months old at the time of trial and was in the care and custody of the Tarrant County Child Welfare Department. The natural father was not present at trial and filed a waiver of interest in the child. Only the mother has contested the suit for termination. Trial was to the court which found: 1) the mother had knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered its physical and emotional well-being; 2) the mother engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical and emotional well-being of the child; and 3) that termination of the parent-child relationship is in the best interest of the child. A Decree of Termination was entered from which the mother brings this appeal.

We affirm.

In parent-child termination proceedings, there are several basic principles that apply. There is a strong presumption that the child's best interest is usually served by keeping it with its natural parents. *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex.1976). Once evidence is produced, though, to support a finding of the non-existence of that presumed fact, the cause will proceed as if no presumption exists. *In Interest of Guillory*, 618 S.W.2d 948 (Tex. Civ.App.—Houston [1st Dist.] 1981, no writ). In order to support an involuntary termination, the essential facts must be proven by "clear and convincing evidence." This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In Interest of G.M.*, 596 S.W.2d 846 (Tex.1980).

The mother raises five points of error on appeal. In the first two points she argues that there is no evidence, or alternatively, the evidence is insufficient to support the court's finding that she knowingly placed the child in a position or circumstances to suffer harm or injury to her physical or emotional well-being. The third and fourth points aver that there is no evidence, or

alternatively, insufficient evidence to support the court's finding that the mother knowingly engaged in conduct or placed the child with others whose conduct endangered the physical or emotional well-being of the child. In the last point of error, the mother alleges the evidence is insufficient to support the court's finding that termination of her parental rights would be in the best interest of the child.

The evidence adduced at trial showed the mother had been diagnosed as suffering from schizophrenia, paranoid type. She had been hospitalized over twenty times and was on medication for the illness at the time of trial. There was also testimony that the mother had been violent in the past because of her mental condition. She had broken a church window, struck a security guard and had attempted to steal a helicopter. There was evidence that the mother had attempted suicide once and made threats to attempt suicide on several other occasions. Dr. Connell, a psychologist who had examined the mother, testified that the prognosis for change in the mother's condition was extremely poor.

While mental incompetence or mental illness alone are not grounds for termination of the parent-child relationship, when a parent's mental state allows him to engage in conduct which endangers the physical or emotional well-being of the child, that conduct has bearing on the advisability of terminating the parent's rights. *Carter v. Dallas Cty. Child Welfare Unit,* 532 S.W.2d 140 (Tex.Civ.App.—Dallas 1976, no writ). The testimony was undisputed that at the time of trial, the mother was unable to care for the child. She was living at the Salvation Army and was unable to work because of her mental condition. Dr. Connell testified that in her opinion the mother would never be capable of providing adequate care for the child.

Carolyn Badgett, a counselor with Parenting Guidance Center and Beverly McCalmont, with the Child Welfare Department, had a chance to observe the mother interact with her child. Ms. Badgett testified that the mother paid little attention to the child

and seemed more concerned with talking to the other adults in the room. Ms. McCalmont testified that the mother was nervous when she was around the child and had almost dropped the child several times. On one occasion when the child was seven weeks old, the mother tried to give the baby water from a dirty cup she found on the floor. Ms. McCalmont testified that, in her opinion, the mother could never take care of the child.

The mother testified that "I want a place to place the child and get it any time I want to." She had two solutions to her problem: 1) to leave the child in foster care for eighteen years; or 2) take the child to Illinois and let her ex-husband and his wife take care of the child. There was testimony that the mother's income was $280 a month which she received from social security.

Ms. Badgett and Ms. McCalmont agreed that placing a child in foster care for eighteen years would be confusing for the child and does not give the child the permanency of a family needed for emotional stability. There was also testimony that if the parental rights are terminated, the child would be placed for adoption.

Margie Peterson, the maternity program coordinator for Catholic Social Services testified that the mother had indicated to her that she would place her child for adoption if she received the $5,000 adoption fee. Ms. McCalmont testified the mother had told her she was mad at the adoption agency because she did not get the adoption fee.

In her brief, the mother contends there is not "a single instance of endangering conduct directed toward the child." It is well-settled that it is not necessary that the endangering conduct be directed at the child or that the child actually suffers harm. *Allred v. Harris Cty. Child Welfare Unit,* 615 S.W.2d 803 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). In reviewing the record, we find that the court had sufficient evidence before it to support its finding that the mother had engaged in conduct which endangered the emotional well-being

of the child. The first four points of error are overruled.

 We now turn to the question of whether or not termination of the parental rights is in the best interest of the child. There are a number of factors which may be considered in ascertaining the best interest of the child. These factors include:

1) The emotional and physical needs of the child now and in the future;

2) The emotional and physical danger to the child now and in the future;

3) The parental abilities of the individuals seeking custody;

4) The plans for the child by the agency seeking custody;

5) The stability of the home or proposed placement;

6) The acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

7) Any excuse for the acts or omissions of the parent.

*Holley v. Adams,* 544 S.W.2d 367 (Tex.1976).

The mother admitted at trial that she was unable to care for the child and there was substantial testimony that she would never be able to care for the child. There was evidence that if the parental rights are terminated, the child could be placed for adoption and that this would be the best way to fulfill the emotional and physical needs of the child.

There was also considerable evidence that the existing parent-child relationship is not a proper one. The acts on the part of the mother which warrant this conclusion are: 1) her history of violence; 2) her continuing course of conduct of attempting suicide; 3) her lack of sensitivity to the needs of the child, evidenced by her wanting the child to remain in foster care for 18 years; 4) her attempts to place the child for adoption in exchange for the adoption fee; 5) her lack of nurturing skills and inadequate interaction with the child; and 6) her admitted inability, now and in the future, to provide a home and to care for the child.

The trial court had sufficient evidence to support the finding that termination of the parent-child relationship would be in the best interest of the child. The fifth point of error is overruled.

Affirmed.