IN RE D.T.D AND K.C.H.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-203-CV

IN THE INTEREST OF D.T.D. AND K.C.H., CHILDREN 

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Augustine Vernette D. appeals from the trial court’s order terminating her parental rights in her children, D.T.D. and K.C.H.
(footnote: 2)  

Based on the jury’s findings, the trial court terminated Augustine’s parental rights on the following grounds:

•Augustine had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being;

•Augustine had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being;

•Augustine had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain return of the children, who had been in the Texas Department of Family and Protective Services’ (DFPS’s) conservatorship as a result of their removal from Augustine due to abuse or neglect; and

•termination was in the children’s best interest.
(footnote: 3) 

We affirm.

Augustine’s court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion.  In the brief, counsel avers that, in his professional opinion, this appeal is frivolous.  Counsel’s brief and motion meet the requirements of 
Anders v. California
(footnote: 4) by presenting a professional evaluation of the record demonstrating why there are no arguable grounds for relief.  This court has previously held that 
Anders
 procedures apply in parental rights termination cases.
(footnote: 5)
 Augustine’s counsel presents a discussion of four potential sources of error:  whether the evidence is legally and factually sufficient to support the jury’s finding that Augustine knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being (section 161.001(D)); and whether the evidence is legally and factually sufficient to support the jury’s finding that Augustine engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being (section 161.001(E)). 

Augustine’s appellate counsel acknowledges that Augustine testified at trial and admitted facts that would justify termination of her parental rights under section 161.001(O) on the ground that she did not comply with her service plan.  We can affirm on an unchallenged, independent ground supporting termination, such as this one.
(footnote: 6)
 Counsel contends that we should, nonetheless, review the legal and factual sufficiency of the evidence to support termination under section 161.001(D) and (E) because termination on those grounds could have collateral consequences adverse to Augustine beyond this case:  a future fact finder could terminate Augustine’s parental rights in after-born children if her parental rights in another child had previously been terminated under subsection (D) or (E).
(footnote: 7)
 Once an appellant’s court-appointed counsel files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of 
Anders
, we are obligated to undertake an independent examination of the record and essentially to rebrief the case for the appellant to see if there is any arguable ground that may be raised on her behalf.
(footnote: 8)  Accordingly, in light of the potential collateral consequences to Augustine, we will review the sufficiency of the evidence to support termination based on the “(D) and (E)” grounds.

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the State must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.
(footnote: 9)  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.
(footnote: 10) 

The higher burden of proof in termination cases alters the appellate standard of legal sufficiency review.
(footnote: 11)  In reviewing the evidence for legal sufficiency in parental termination cases, we must determine “whether the evidence is such that a factfinder could reasonably form a firm belief or conviction” that the grounds for termination were proven.
(footnote: 12)  We must review all the evidence in the light most favorable to the finding and judgment.
(footnote: 13)  This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so.
(footnote: 14)  We must also disregard all evidence that a reasonable factfinder could have disbelieved.
(footnote: 15) That is, we must “credit[] favorable evidence if reasonable jurors [or a reasonable factfinder] could” and “disregard[] contrary evidence unless reasonable jurors [or a reasonable factfinder] could not.”
(footnote: 16)  We must consider, however, undisputed evidence even if it does not support the finding.
(footnote: 17)
 The higher burden of proof in termination cases also alters the appellate standard of factual sufficiency review.
(footnote: 18)  Our inquiry here is whether, on the entire record, a factfinder reasonably could form a firm conviction or belief that the parent violated one of the conduct provisions of section 161.001(1) and that the termination of the parent’s parental rights would be in the best interest of the child.
(footnote: 19)
 Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future; 

(3) the emotional and physical danger to the child now and in the future; 

(4) the parental abilities of the individuals seeking custody; 

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody; 

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and 

(9) any excuse for the acts or omissions of the parent.
(footnote: 20)

These factors are not exhaustive.  Some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.
(footnote: 21)
 Termination based on section 161.001(E) is proper if clear and convincing evidence shows that the parent engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children’s physical or emotional well-being.
(footnote: 22)  Subsection E requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act.
(footnote: 23)
 “Endanger” means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffer injury.
(footnote: 24)  For instance, physical abuse is not required when a parent's omission, such as her neglect, has endangered the children.
(footnote: 25)  Further, when a parent's mental state allows her to engage in conduct that endangers the physical or emotional well-being of the child, that conduct has bearing on the advisability of terminating the parent's rights.
(footnote: 26)
 In this case, the record shows as follows:

Dayana Alcazar, a CPS investigator, testified regarding the unsafe conditions of Augustine’s apartment, including Alcazar’s repeated findings of filth, dirty clothes, spoiled food, and stained and torn mattresses without sheets.  Alcazar also testified that Augustine had little or no formula in her home for K.C.H.,
(footnote: 27) as well as an insufficient amount of food to feed the rest of the family members who lived with her.  In addition, Augustine admitted at trial that she was not in a position to adequately care for her children. 

Further, Denton County MHMR Intake Specialist Tammy Weppelman testified that, just over a month before trial, Augustine had met the criteria for being in crisis and was having suicidal ideations.  Weppelman testified that Augustine said she had a history of hearing voices, that she was thinking about killing herself, that she had over twenty suicide attempts, and that she had a history of drinking bleach and cutting herself with knives. 

Other evidence presented at trial shows that Augustine refused to take numerous drug tests, had used crack, barbiturates, and marijuana, and had tested positive for crack several times, including a couple of weeks before trial. Further, there is evidence that Augustine angered easily, had a history of aggressive behavior, would get drunk and fight, had engaged in thirty or more fights intending to hurt people, and had been arrested in 1999 and 2000 for assaults for which the charges had later been dismissed. 

Augustine also allowed D.T.D. to stay with Augustine’s sister and brother-in-law, Mona and Todd Perry.  A CASA advocate testified that Todd and Mona had extensive histories of abuse and criminal activity.  For example, Mona’s children had been removed from her care during the time D.T.D. was staying with her.  In addition, Todd had pleaded guilty to and received two years’ probation for assaulting a child and had also pleaded guilty to aggravated assault on Mona. 

There is also evidence that Augustine repeatedly left the children in the care of Alvin, their father, even though Alvin had been convicted of assaulting Augustine when she was four months pregnant with D.T.D.  Further, Alvin admitted that he had been convicted for a 1995 assault on his then eleven-year-old son.  

In addition, Alvin testified that he was an alcoholic, sometimes drinking as many as ten 40-ounce beers a day.  He also testified that he smoked crack one or two times per week, and there was evidence at trial that he had tested positive for cocaine.  The jury easily could have disbelieved Augustine’s assertions at trial that Alvin was never under the influence of these substances while watching the children and Alvin’s assertion that the children were never around when he smoked crack.  Alvin claimed at trial that his drinking and drug abuse did not impair his parenting abilities and that he was a better parent while smoking crack because it caused him to cook and clean the house. 

D.T.D. also had numerous scars or marks on his body:  a bruise on his neck, a circular scar on the right side of his chest, a scar on his face, several lineal scars on his back, some diagonal white marks across his buttocks, and three evenly-spaced lineal scars on his buttocks.  Although the evidence did not expressly confirm that either parent caused a majority of the scars,
(footnote: 28) the scars’ existence was, at the very least, further evidence of D.T.D.’s dangerous environment.  For example, Alvin testified that D.T.D. got the three evenly-spaced lineal scars on his buttocks at the age of two or three after a bath when he was drying himself in front of a space heater that had been nailed against the wall because the hot water had gone out. 

This evidence is sufficient to produce in the minds of the jury a firm belief or conviction that Augustine had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children’s physical or emotional well-being.
(footnote: 29)  Accordingly, the evidence is legally and factually sufficient to support termination of Augustine’s parental rights under section 161.001(E).
(footnote: 30)  We overrule appellate counsel’s potential sources of error based on section 161.001(E).
(footnote: 31)
 Finally, there is evidence that Augustine was not committed to the children in such a way as to ensure their well-being.  Specifically, the evidence shows that D.T.D. was moderately mentally retarded, suffered from severe depression, had special needs that would be very demanding of his caregiver, and would need a caregiver who was very structured, patient, stable, and able to provide appropriate behavior modifications.  But when the CASA advocate spoke with Augustine about D.T.D.’s special needs and offered to meet and discuss what D.T.D. would need if he were to move back in with her, Augustine agreed to meet but never contacted the CASA advocate about it. The CASA advocate also testified that Augustine did not indicate having any insight into what D.T.D.’s needs were and had even indicated her belief that D.T.D. was very intelligent and knew his colors, numbers, and letters at an early age.  The jury also could have questioned Augustine’s commitment to D.T.D. and K.C.H. when it heard that Augustine did not comply with her service plan and ignored K.C.H. during a good part of the time when she visited the children, and when it saw Augustine smile inappropriately as she testified at trial.  

In contrast, the evidence shows that the children’s therapeutic foster mother seemed committed to D.T.D., acted like she loved the children, had  bonded with them, seemed like she was doing a good job, seemed especially patient about D.T.D.’s mental retardation, seemed to understand D.T.D.’s needs, and was loving and nurturing.  CASA advocate Robin Napier testified that the foster mother had made a lot of progress with both of the children and that they were thriving under her care.  Napier further testified that the foster mother was eligible to adopt the children and had expressed an interest in adoption. 

This evidence is legally and factually sufficient to support the jury’s finding that termination was in the children’s best interest.
(footnote: 32)
 We turn now to Augustine’s pro se brief.  In her brief, she argues that DFPS failed to prove the grounds alleged for termination.  Augustine also asserts that she did her best to comply with her service plan and take care of her children, and she attempts to explain why she was not successful in these endeavors.  She contends that her attorney failed to present this evidence at trial. 

As we have discussed, however, the record clearly shows that DFPS did prove the alleged grounds for termination. Further, the record shows that Augustine’s attorney presented at trial all the evidence discussed in her pro se brief.  Therefore, we overrule the points raised in Augustine’s pro se brief.

In addition to the matters we have already addressed, our independent review of the record shows that there is no error that arguably might support an appeal or require reversal.  There are no jurisdictional errors.  DFPS had standing to petition for termination, and the trial court had jurisdiction over the suit.
(footnote: 33)  Further, the order of termination was rendered by the first anniversary of the date on which the trial court appointed DFPS temporary managing conservator of the children.
(footnote: 34) 

Finally, the record shows that Augustine’s trial counsel rendered her reasonably effective legal assistance.
(footnote: 35)  
Although Augustine testified at trial and admitted facts that would justify termination on the ground that she did not comply with her service plan, appellate counsel points out that her trial attorney’s strategy was to make these admissions and then ask the jury not to terminate Augustine’s parental rights but instead to grant her possessory conservatorship of the children.  Appellate counsel states that this trial strategy appears to have been the only reasonable one based on the facts of this case, which were “overwhelming[ly]” against Augustine.  We agree.

Having disposed of appellate counsel’s potential sources of error and Augustine’s complaints raised in her pro se brief, and conducted our own independent review of the record, we grant appellate counsel’s motion to withdraw and affirm the trial court’s order of termination.

PER CURIAM

PANEL F: CAYCE, C.J.; DAUPHINOT and HOLMAN, JJ.

DELIVERED:  August 4, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The trial court also terminated the parental rights of the children’s father, Alvin Douglas H., but he has not appealed. 

3:
See
 
Tex. Fam. Code Ann.
 § 161.001(1)(D), (E), (O), (2) (Vernon 2002).  The jury also found that Augustine contumaciously refused to submit to a reasonable and lawful court order under subchapter D, chapter 261 of the family code.  
Id.
 § 161.001(I).  DFPS asserts that the trial court’s failure to include this ground in its termination order was simply a clerical error.  Based on our disposition of this appeal, we need not consider this matter.  
See
 
Tex. R. App. P.
 47.1.

4:
386 U.S. 738, 87 S. Ct. 1396 (1967).

5:
In re K.M.,
 98 S.W.3d 774, 776-77 (Tex. App.—Fort Worth 2003, no pet.).

6:
See Richardson v. Green,
 677 S.W.2d 497, 499 (Tex. 1984); 
Green v. Tex. Dep’t of Protective and Regulatory Servs.,
 25 S.W.3d 213, 219-20 (Tex. App.—El Paso 2000, no pet.).

7:
See
 
Tex. Fam. Code Ann.
 § 161.001(M).

8:
See Stafford v. State
, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).

9:
Tex. Fam. Code Ann. 
§ 161.001 (Vernon 2002); 
Richardson
, 677 S.W.2d at 499; 
Swate v. Swate
, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).

10:
Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).

11:
In re J.F.C.
, 96 S.W.3d 256, 265 (Tex. 2002).

12:
Id
. at 265-66; 
see also 
Tex. Fam. Code Ann. 
§ 101.007 (Vernon 2002).

13:
J.F.C.,
 96 S.W.3d at 266.

14:
Id.

15:
Id.

16:
City of Keller v. Wilson
, 48 Tex. Sup. Ct. J. 848, 849, 2005 WL 1366509, at *1 (Tex. June 10, 2005). 

17:
J.F.C.,
 96 S.W.3d at 266.

18:
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002).

19:
Id
. at 28.

20:
Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).

21:
C.H
., 89 S.W.3d at 27.

22:
Tex. Fam. Code Ann.
 § 161.001(E).

23:
In re D.M.,
 58 S.W.3d 801, 811-12 (Tex. App.—Fort Worth 2001, no pet.).

24:
Boyd,
 727 S.W.2d at 533.

25:
Phillips v. Tex. Dep’t of Protective and Regulatory Servs.,
 25 S.W.3d 348, 354 (Tex. App.—Austin 2000, no pet.).

26:
In re J.I.T.P.,
 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.); 
In re C.D.,
 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 1984, no writ).

27:
K.C.H. was four months old when DFPS petitioned for termination. 

28:
There is evidence that Augustine was responsible for the scar on D.T.D.’s face. 

29:
See
 
Tex. Fam. Code Ann. 
§§ 101.007, 161.001(E).

30:
See id.
 § 161.001(E); 
J.F.C.
, 96 S.W.3d at 265-66; 
C.H.
, 89 S.W.3d at 25.

31:
In light of this holding, we need not consider appellate counsel’s potential sources of error based on section 161.001(D).  
See
 
Tex. Fam. Code Ann.
 § 161.001; 
Tex. R. App. P.
 47.1.

32:
See Holley,
 544 S.W.2d at 371-72; 
see also C.H.,
 89 S.W.3d at 27.

33:
See
 
Tex. Fam. Code Ann.
 § 102.003(5) (Vernon Supp. 2004-05) §§ 152.202, 262.001(a), 262.002 (Vernon 2002).

34:
See id.
 § 263.401(a) (Vernon 2002).

35:
See In re M.S.,
 115 S.W.3d 534, 544-45 (Tex. 2003) (holding that statutory right to counsel in parental rights termination cases embodies right to effective counsel, which is governed by 
Strickland v. Washington
 standard); 
see also
 
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984) (holding that appellant claiming ineffective assistance must show both that her counsel's performance was deficient and that the deficient performance prejudiced the defense).