Opinion issued May 03, 2012.



In The

Court of Appeals

For The

First District of Texas

————————————

No.
01-11-00763-CV

———————————

E.J.,
Appellant

V.

Department of Family & Protective Services, Appellee



 



 

On Appeal from the 315th
Judicial District Court

Harris County, Texas



Trial
Court Case No. 2010-02284J

 



 

 

MEMORANDUM OPINION

          In
this accelerated appeal,[1] appellant, E.J., challenges
the trial court’s order, entered after a bench trial, terminating her parental
rights to her legally-adopted, minor grandson. 
In her first through third issues, appellant contends that the evidence
is legally and factually insufficient to support the trial court’s findings
that she engaged in conduct or knowingly placed the child with others who
engaged in conduct that endangered the physical or emotional well-being of the
child,[2] she has a mental or
emotional illness or a mental deficiency that renders her unable to provide for
the physical, emotional, and mental needs of the child,[3] and termination of her
parental rights was in the best interest of the child.[4]  In her fourth and fifth issues, appellant
contends that the trial court abused its discretion in granting the request of
appellee, the Department of Family and Protective Services (“DFPS”), for an
oral trial amendment to include an additional ground for termination and her
trial counsel provided her with ineffective assistance of counsel.  

          We affirm.

Background

          Cimberli Darrough, the caseworker assigned to assist the
child, testified that the child, who had been diagnosed with “bipolar, ADHD,
maybe depressive disorder with psychotic features,” was currently taking the
medications Focalin and Invaegar.  She
explained that the child had been living with appellant, his biological
grandmother and adoptive mother, since he was an infant.  At the time of trial, the child was 11 years old, and appellant was almost 81 years old.  DFPS took custody of the child after he had
“attacked his grandmother on two occasions.” During the second attack, the
child had assaulted appellant “with a knife and threatened to cut off his
penis.”    Darrough was also concerned
about “threatening letters” left in appellant’s home “that were written about
killing [appellant] and [the child] and ghosts.”  Appellant told Darrough that the notes came
from her son, D.B., the child’s biological father, but Darrough opined that
appellant’s explanation was not possible because D.B. was incarcerated at the
time.  Darrough also testified that
appellant “was not properly administering [the child’s] medication.”  

          Darrough further testified that appellant would often
forget her appointments to visit the child and “regularly frequents the CPS
office demanding to have visits  . . .
even when visits are not scheduled.”  On
three occasions, appellant “had to be escorted out by the CPS officer.”  Darrough also noted
“inappropriate actions” during appellant’s visits, such as “one occasion where
[the child] was too close and was almost sitting on [appellant’s] lap.”  On another occasion, appellant “became irate”
and approached Darrough “in a defensive manner,” so Darrough “exited the room
to avoid . . . confrontation and [a] security officer was called.”  Pursuant to DFPS’s request, appellant
underwent a psychological examination, and the psychologist recommended that
“if dementia was found,” the child “should be removed from [appellant].”  Appellant also underwent a psychiatric
evaluation, after which she was prescribed Arocet for “mild cognitive
impairment” and assigned to take parenting classes, which she completed.  On cross-examination, Darrough admitted that
the psychological assessment revealed that appellant “would be capable of
taking care of [the child] if she had some assistance.”  

          Dr. Jenny Stadler, a clinical psychologist, testified that
she performed a psychological evaluation of appellant.  She noted that appellant “was exhibiting
signs of adjustment disorder” because of stress related to the child being
taken from her home.  Stadler explained
that because appellant demonstrated “some pretty significant impairments
in memory and some slight impairments in visual conception,” she recommended
that appellant see a neuropsychologist to examine her for possible
dementia.  Stadler’s final diagnosis was
that appellant showed “evidence of mild cognitive impairment that can indicate
possible dementia.”  She thought that
appellant’s symptoms could make parenting the child “difficult if she couldn’t
remember when to give [him] medication or how to treat him consistently.”  Based on appellant’s statements to her, Stadler “firmly” believed that D.B. “had been in [appellant’s] home” until Stadler was
later informed that D.B. was actually incarcerated.  On cross-examination, Stadler
explained that, looking at the medical records, appellant had never been diagnosed
with dementia.  

          Appellant testified that she first started caring for the
child when he was “a few months old” because D.B. refused to care for him.  Appellant asserted that the child did not
attack her but “was attacking himself” because “his
father came and put notes under the doors.” 
She noted that she had seen D.B. on several occasions since Hurricane
Ike in September 2008.  On
cross-examination, appellant further asserted that she had once called for
emergency assistance upon finding D.B. in her home, but the police officer who
responded did not arrest D.B.  

Sufficiency of the Evidence

          In her
first issue, appellant argues that the evidence is legally and factually
insufficient to support the trial court’s finding that she engaged in conduct
that endangered the physical or emotional well-being of the child because “DFPS
has not shown any course of conduct by [appellant] to prove endangerment.”  See
Tex. Fam. Code Ann. § 161.001(E)
(Vernon Supp. 2011). 
In her second issue, appellant argues that the evidence is legally and
factually insufficient to support termination of her parental rights on the
ground of her mental deficiency because “DFPS has not proven the element of
mental deficiency by clear and convincing evidence” and “DFPS did not make
reasonable efforts to return the child.” 
See id. § 161.003 (Vernon 2008).  In her third issue, appellant argues that the
evidence is legally and factually insufficient to support the trial court’s
finding that termination of her parental rights was in the best interest of the
child because the child has lived with appellant “almost his entire life,” the
child and appellant are “close and bonded,” and “[n]o expert testimony was
offered to link the child’s needs with any alleged neglect on [appellant’s]
part.”  See id. §
161.001(2).

Standard of Review

          Because
termination of parental rights “is
complete, final, irrevocable, and divests for all time that natural right . . .
, the evidence in support of termination must be
clear and convincing before a court may involuntarily terminate a parent’s
rights.”  Holick v. Smith, 685 S.W.2d
18, 20 (Tex. 1985) (citing Santosky v
Kramer,
455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982); Richardson v. Green, 677 S.W.2d
497, 500 (Tex. 1984)).  Clear and
convincing evidence is “the measure or degree of proof that will produce in the
mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established.”  Tex. Fam. Code Ann. § 101.007 (Vernon
2008); In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002).
 Because the standard of proof is “clear
and convincing,” the Texas Supreme Court has held that the traditional legal
and factual standards of review are inadequate.  In
re J.F.C., 96 S.W.3d at 264–66.

In conducting a
legal-sufficiency review in a parental-rights termination
case, we must determine whether the evidence, viewed in the light most
favorable to the finding, is such that the fact finder could reasonably have
formed a firm belief or conviction about the truth of the matter on which DFPS
bore the burden of proof.  See id.
at 266.  In
viewing the evidence in the light most favorable to the finding, we “must
assume that the fact finder resolved disputed facts in favor of its finding if
a reasonable fact finder could do so,” and we “should disregard all evidence
that a reasonable fact finder could have disbelieved or found to be
incredible.”  In re J.P.B., 180 S.W.3d
570, 573 (Tex. 2005) (citing In re J.F.C., 96 S.W.3d at 266).  

In conducting a
factual-sufficiency review in a parental-rights termination case, we must
determine whether, considering the entire record, including evidence both
supporting and contradicting the finding, a fact finder reasonably could have
formed a firm conviction or belief about the truth of the matter on which the
State bore the burden of proof.  In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).  We should consider whether the disputed
evidence is such that a reasonable fact finder could not have resolved the
disputed evidence in favor of its finding.  In
re J.F.C., 96 S.W.3d at 266–67.
 “If, in light of the entire record, the
disputed evidence that a reasonable fact finder could not have credited in
favor of the finding is so significant that a fact finder could not reasonably
have formed a firm belief or conviction, then the evidence is factually
insufficient.”  In
re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).

 

 

Endangerment

In proceedings to terminate the parent-child relationship
brought under section 161.001, DFPS must establish,
by clear and convincing evidence, one or more of the acts or omissions
enumerated under subsection (1) of section 161.001 and that termination is in the best interest of
the child.  Tex. Fam. Code Ann. § 161.001.
 Both elements must be established, and termination may not be based solely on
the best interest of the child as determined by the trier of fact.  Tex. Dep’t of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).  “Only one predicate finding under section
161.001(1) is necessary to support a judgment of termination
when there is also a finding that termination
is in the child’s best interest.”  In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).

          Under section 161.001(1)(E), a court
may terminate the parent-child relationship if the court finds by clear and
convincing evidence that the
parent has engaged in conduct, or knowingly placed the child with persons who
engaged in conduct, that endangers the physical or emotional well-being of the
child.  Tex. Fam. Code Ann. § 161.001(1)(E).  “Endanger”
means to expose to loss or injury or to jeopardize.  Boyd, 727 S.W.2d at 533.
 Although such endangerment
requires more than a threat of metaphysical injury or the possible ill effects
of a less-than-ideal family environment, it is not necessary that the conduct
be directed at the child or that the child actually suffer injury.  In re J.T.G., 121 S.W.3d
117, 125 (Tex. App.—Fort Worth 2003, no pet.).  The specific danger to the child’s well-being
may be inferred from parental misconduct standing alone.  Boyd,
727 S.W.2d at 533; In re R.W.,
129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

          While mental incompetence or mental
illness alone are not grounds for termination of the parent-child relationship,
when a parent’s mental state allows her to engage in conduct that endangers the
physical or emotional well-being of the child, that conduct has bearing on the
advisability of terminating the parent’s rights.  In re C.D., 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 1984, no
pet.) (citing Carter v. Dallas County Child Welfare Unit, 532 S.W.2d 140 (Tex.
Civ. App.—Dallas 1976, no writ)). 

Here, Darrough testified,

[The
child] came into care after he had attacked his grandmother on two
occasions.  There was a second occasion
where he attacked her with a knife and threatened to cut off his penis.  HPD was called out and there were two adult
protective cases involving [the child] and grandmother.  His grandmother was not properly
administering his medication.

 

In
addition to her testimony regarding the child’s two attacks and the
determination that appellant “was not properly administering” the child’s
medication, Darrough testified that appellant “forgets her appointments” and
“regularly frequents the CPS office demanding to have visits with [the child]
even when visits are not scheduled.”  
Darrough also noted that although appellant asserted that D.B. had visited
her apartment and left various threatening notes, Adult Protective Services
informed Darrough that appellant’s son was incarcerated at those times.

          In regard to the child, Darrough
testified that he suffered from “bipolar, ADHD, maybe depressive disorder with
psychotic features.”  In her
psychological evaluation, Dr. Stadler noted,

[The
child] has been diagnosed with severe mental illness, including Bipolar
Disorder and Attention-Deficit/Hyperactivity Disorder, and [the child]
acknowledged that when he does not take his prescribed medication he can become
violent with [appellant].

 

          In regard to appellant’s mental
faculties, Dr. Stadler, in her psychological evaluation, reported that
appellant demonstrated “Severe Impairment” in memory, and she, at trial,
testified that appellant demonstrated “some pretty significant impairments in memory and some slight impairments in visual
conception.”  She determined that
appellant’s “profile suggests Mild Cognitive Impairment, although accurate
diagnosis of MCI must be made via a neurological evaluation.”  In the psychological evaluation, Dr. Stadler
recommended that appellant 

participate in a neuropsychological evaluation regarding the possibility of
Mild Cognitive Impairment, and any possible dementia process.  If dementia of any kind is diagnosed, it is
recommended that [the child] be placed out of [appellant’s]
sole custody.

 

(emphasis in original). 
Dr. Stadler further testified that “[t]here is evidence of mild
cognitive impairment that can indicate possible dementia” and mild cognitive
impairment “can be a progressive illness” that “can get worse.”  She also noted that a psychiatric report of
appellant included “a diagnosis of mild cognitive impairment.”  Stadler explained that mild cognitive
impairment “is generally related to memory issues” and “[i]f a person can’t
remember to take a child to a doctor’s appointment, give them medication, those
kinds of things, that is a concern.”

          Finally, the record reveals that
appellant’s testimony was occasionally incoherent or non-responsive to
counsel’s questioning.  For example, she
was non-responsive to her own counsel’s questions regarding whether she would
cooperate with the court in the future to receive possession of the child, as
indicated in the following exchange,

[Appellant’s Counsel]: But if the Judge decided that he couldn’t come
back with you today, would you be willing to work with CPS more?

          

[Appellant]:                   I will tell you the truth.  When I needed CPS eleven years ago – and ten
years ago, when my son went to Canada and came back,        I would have appreciated what I received
otherwise.  I can handle [the child]
now.  I can show you his works now that
he has done.

 

[Appellant’s Counsel]:  But if the Judge says, no, he can’t come live
with you, if that is what the Judge says. 
Would you be willing to work with CPS and do some therapy with him and
do the things necessary to get him home?

 

[Appellant]:                   I
would need [the child] as soon – before the sun sets this evening.  Because I get to know him
and I’ve gotten him to counselors and the school when he was old enough.  Also used to visit, take him to the doctor
and everything was working fine.  He was
really changing.

 

[Appellant’s Counsel]: When we talked outside, you agreed that you
would work with CPS some more to get him back if that is what the Judge said
you needed to do?

 

[Appellant]:                   If
CPS can tell me what they have or do better than what was done by the other
group, I might say yes.

 

[Appellant’s Counsel]: But you would do it if the Judge said so,
wouldn’t you?

 

[Appellant]:                   The
Judge is the Judge, you know.

In
addition, appellant’s testimony indicated that she may not fully appreciate the
severity of the child’s mental illnesses. 
For example, when asked what the child’s “medical needs” were, she
responded, “they gave him medication for the ADD thing, the pills.”  When further pressed to describe the child’s
“diagnoses” or “diseases,” she responded, “Today I am here, so I wouldn’t
know.”

          In sum, viewing the evidence in the
light most favorable to the verdict, the evidence indicates that the child
suffers from bipolar disorder and ADHD and could become violent when not given
his medication.  DFPS presented evidence
that the child attacked appellant on at least two occasions, and Darrough opined
that appellant was not properly administering the child’s medication.  The medical testimony and psychological
evaluation provides evidence that appellant has “severe” memory impairment and
suffers from mild cognitive impairment and possible dementia.  Darrough also testified that although
appellant claimed that D.B. had visited her home recently, he was incarcerated
at the time.  And appellant’s own
testimony demonstrates some evidence of her mental illness.  From this evidence, the trial court could have
reasonably formed a firm conviction or belief that appellant suffers from a
mental illness that caused her to improperly administer the child’s medication,
which, considering the child’s attacks on appellant, threats to harm himself,
and his own mental illness, endangered the child’s physical and emotional
well-being.  See In re C.D., 664 S.W.2d at 853.  Accordingly, we hold that the evidence is
legally sufficient to support termination of appellant’s parental rights under
section 161.001(1)(E).

          In conducting our factual-sufficiency
review, we consider the entire record, including evidence both supporting and contradicting
the finding.  In re
C.H.,
89 S.W.3d at 25.  Despite her
testimony regarding appellant’s memory impairment, Dr. Stadler, in her
evaluation, stated that appellant’s “abilities in reasoning and judgment
appeared to be intact.”  At trial, Dr.
Stadler testified that she thought that appellant could meet the child’s needs,
but she was not sure whether appellant could do so on a “consistent basis
without support.”  She also explained
that, after reviewing appellant’s psychiatric evaluation, appellant “seems to
be responding” to medication and “[i]f she continues to respond . . . there is
a possibility that [appellant’s condition] can improve.”  

          Despite some favorable testimony from
Dr. Stadler, the trial court could have noted that she last evaluated appellant
one year before the trial.  In addition,
from appellant’s own testimony and behavior at trial, and her continued belief
that she had seen D.B. in her apartment when other evidence indicated that he
was incarcerated, the trial court could have reasonably concluded that
appellant’s mental illness endangered the child.  And, from appellant’s assertion that the
child had hid medication under his tongue, the trial court could have
reasonably concluded that appellant could not properly give the child his
medication, prompting the two attacks.  See In re J.F.C., 96
S.W.3d at 266–67.
 Thus, considering the
entire record, the trial court could have reasonably formed a firm conviction
or belief that appellant had engaged in conduct that endangered the child’s
physical and emotional well-being. 
Accordingly, we hold that the evidence is factually sufficient to
support the termination of appellant’s parental rights under section 161.001(1)(E).    

We overrule appellant’s first issue.

Best
Interest of the Child

          In determining whether the termination
of appellant’s parental rights was in the child’s best interest, we may
consider several factors, including (1) the child’s desires, (2) the current
and future physical and emotional needs of the child, (3) the current and
future physical danger to the child, (4) the parental abilities of the person
seeking custody, (5) whether programs are available to assist the person
seeking custody in promoting the best interests
of the child, (6) plans for the child
by the person seeking custody, (7) the stability of the home, (8) acts or
omissions of the parent that may indicate that the parent-child relationship is
not proper, and (9) any excuse for acts or omissions of the parent.  Holley v. Adams, 544 S.W.2d
367, 371–72 (Tex. 1976); In re L.M., 104 S.W.3d 642, 647 (Tex. App.—Houston
[1st Dist.] 2003, no pet.).  The Holley
factors are not exhaustive, and there is no requirement that DFPS prove all
factors as a condition precedent to parental termination.  See In re C.H., 89 S.W.3d at 27.

          In regard to the child’s desires, the
child did not testify or speak directly to the trial court.  Darrough admitted that the child was “bonded”
to appellant, “loves her very much,” and “still expresses a desire to have a
relationship with her.”  Darrough also
explained that although the child had expressed a desire to live with appellant
“many months ago,” the child, more recently, “has asked his foster mother if
she would adopt him.”  In regard to the
child’s current and future physical and emotional needs, there is substantial
evidence that the child had pressing and significant needs.  Darrough testified that the child suffers
from “bipolar, maybe depressive disorder with psychotic features.”  In her psychological evaluation of appellant,
Dr. Stadler noted that the child “has been diagnosed with severe mental
illness, including Bipolar Disorder and Attention-Deficit/Hyperactivity
Disorder, and [the child] has acknowledged that when he does not take his
prescribed medication he can become violent.” 
Dr. Stadler explained that the child “clearly has a need for medication
and consistent behavior.”  In regard to
current and future physical danger to the child, Darrough testified that the
child had twice attacked appellant and threatened to harm himself as a result
of appellant improperly administering his medication.  She also described “threatening letters”
found around the house “written about killing [appellant] and [the child] and
ghosts.”  And, in her psychological
evaluation, Dr. Stadler noted that Adult Protective Services had concluded that
the letters were “most likely written by [the child].”  

          In regard to the parental abilities of
the parties seeking custody, as stated above, there is significant evidence
regarding appellant’s mild cognitive impairment, “significant” memory
impairment, possible dementia, and possible hallucinations involving D.B.  Dr. Stadler testified that she believed that
appellant could meet the child’s needs with “support,” but “it could be
difficult if she couldn’t remember when to give medication or how to treat him
consistently because she couldn’t remember what she’d done the day
before.”  In contrast, Darrough testified
that the child’s foster parent treats the child’s mental illness
“appropriately” and “does very, very well with” him.  She concluded that the foster mother could
meet “all of [the child’s] physical and emotional
needs.”  In regard to the programs
available to assist appellant, Darrough testified that appellant did complete
parenting classes, undergo psychological and psychiatric evaluations, and attend
supportive counseling, pursuant to her Family Service Plan.  However, the trial court could have
reasonably discounted the efficacy of these programs by noting her behavior and
testimony during trial.  Darrough also
explained that the child’s therapist advised against family therapy because the
child “has some psychological issues” that he felt needed to be under control
before he engaged in family therapy with appellant.

          In regard to the plans for the child
and stability of the home, Darrough testified that the foster mother stated
“that she loves [the child] and he is a part of her family already.”  Darrough explained that it was not “typical”
for a foster parent to be willing to adopt “a child that age with his
conditions.”  She also indicated that the
foster parent would allow the child to “continue to have a relationship” with
appellant.  On the other hand, the two
reported attacks on appellant by the child, the “threatening letters” found in
appellant’s home, and appellant’s own mental condition indicate instability in
her home.  In regard to any act or
omissions that may indicate that the existing parent-child relationship is not
proper, Darrough testified that at one visit, “[the child] was too close [to
appellant] and was almost sitting on her lap,” and appellant later became
“belligerent.”  At another visit,
appellant “became irate,” approached Darrough “in a defensive manner,” and had
to be escorted from the room by a security officer.

          In sum, the evidence demonstrates that
appellant suffers from her own mental illnesses, which make caring for the
child’s significant physical and emotional needs extremely difficult.  Although there is some evidence that
appellant’s condition was “improving,” the trial court could have discounted
this claim, observing appellant’s non-responsive testimony at trial.  And, although there is evidence that
appellant and the child are bonded, the trial court could have reasonably
concluded that the child’s health would be in significant danger if he were to continue
living with appellant.  It could also
have taken into account the foster parent’s assertion that she would allow the
child and appellant to continue to have a relationship.  Accordingly, we hold that the evidence is
legally and factually sufficient for the trial court to reasonably form a firm
belief or conviction that termination of appellant’s parental rights was in the
child’s best interest.

          We overrule appellant’s third issue. [5] 

Conclusion

          We affirm
the judgment of the trial court.

 

                                                          

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel consists of Justices
Jennings, Massengale, and Huddle.

 











[1]           See
Tex. Fam. Code Ann. § 263.045(a)
(Vernon Supp. 2011).

 





[2]           See id.
§ 161.001(1)(E) (Vernon Supp. 2011). 


 





[3]           See id. § 161.003
(Vernon 2008).

 





[4]           See id. § 161.001(2).

 





[5]
          Having concluded that the evidence is legally and factually sufficient
to support termination of appellant’s parental rights under section 161.001(1)(E),
we need not address appellant’s second issue in which she challenges the
sufficiency of the evidence under section 161.003.  See In re A.V., 113
S.W.3d at 362.  Furthermore, we need not
address appellant’s fourth issue, in which she argues that the trial court erred in granting
DFPS’s request for an oral trial amendment to include section 161.003 as an
additional ground for termination, or her fifth issue, in which she argues that
she received ineffective assistance of counsel because her trial counsel failed
to preserve error regarding the oral trial amendment.