# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-13-00806-CV

---

### T. V. N., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

---

**FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 258-770-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Based on a jury's findings, the trial court rendered a judgment terminating T.V.N.'s parental rights to her son, W.V.[1] On appeal, T.V.N. contends that (1) the trial court improperly admitted harmful evidence and (2) the evidence is legally and factually insufficient to support the jury's termination and best-interest findings. We will affirm the trial court's decree of termination.[2]

## DISCUSSION

In August 2012, the Texas Department of Family and Protective Services was appointed temporary managing conservator of T.V.N.'s newborn son, W.V., due to potential safety

---

[1] Although the notice of appeal and briefing in this case refer to the appellant as "T.V.N." the trial court's judgment refers to her as "T.N.V." The style of this cause conforms to the notice of appeal.

[2] The parties are familiar with the facts, procedural history, and applicable standards of review. Accordingly, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.4.

and neglect issues.[3] W.V., who was born prematurely, is developmentally delayed, suffers from a kidney condition, and has other health issues that have required surgery. His mother, T.V.N., has mental limitations that have historically affected her ability to attend to her own serious physical and mental-health issues. After a three-day trial in October 2013, the jury found grounds to terminate the parent-child relationship and that termination of parental rights was in W.V.'s best interest. *See* Tex. Fam. Code §§ 161.001(1)(E) (endangering conduct), (O) (failure to comply with a court order), .001(2) (best interest), .003 (inability to care for child due to "mental or emotional illness or a mental deficiency").

In her first appellate issue, T.V.N. contends that the trial court erroneously admitted several reports prepared by Adult Protective Service (APS) caseworkers in connection with the investigation of allegations that T.V.N. had suffered from physical and medical neglect, exploitation, and homelessness in the two-year period preceding W.V.'s birth. T.V.N. asserts that the sponsoring witness—an APS caseworker who prepared some but not all of the reports—failed to meet the requirements of the business-records exception to the hearsay rule because he did not have personal knowledge of the information contained in reports that he did not prepare. *See* Tex. R. Evid. 803(6) (hearsay exception for records of regularly conducted activities). Relying on an APS policy provided to this Court on appeal, T.V.N. further contends that the sponsoring witness was not the designated custodian of the records. *See id.* (requiring that predicate for business-records exception be established "by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method of preparation indicate

---

[3] W.V.'s father is unknown.

lack of trustworthiness"). We conclude that the trial court did not abuse its discretion in admitting the APS reports into evidence. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753-54 (Tex. 1995) (trial court's decision regarding admission of evidence is reviewed for abuse of discretion). Regardless of whether the sponsoring witness is the custodian of the records or "other qualified witness," "[r]ule 803(6) does not require the predicate witness to be the record's creator or have personal knowledge of the content of the record [as long as] the witness [has] personal knowledge of the manner in which the records were prepared." *Riddle v. Unifund CCR Partners*, 298 S.W.3d 780, 783 (Tex. App.—El Paso 2009, no pet.). Here, the record reflects that the sponsoring witness adequately established his knowledge of the manner in which the documents were prepared. Even if the caseworker's testimony was somehow insufficient, any error was cured by his supervisor's testimony that all of the challenged reports were prepared in accordance with the standard procedures APS employs. T.V.N.'s first appellate issue is overruled.

In her remaining appellate issues, T.V.N. challenges the sufficiency of the evidence to support the jury's findings that there are grounds to terminate her parental rights and that termination of the parent-child relationship is in W.V.'s best interest. Multiple statutory grounds for termination were submitted to the jury in a broad-form question, but only one ground is required to terminate parental rights. *See, e.g.*, *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no pet.). Accordingly, we must affirm the termination order if the evidence is legally and factually sufficient to support at least one of the statutory grounds for termination and the jury's best-interest finding. *Id*. We conclude that the jury's verdict may be sustained based on evidence of T.V.N.'s inability to care for W.V. due to mental or emotional illness or deficiency.

3

Under section 161.003 of the Texas Family Code, the court may terminate the parent-child relationship if there is evidence that:

> (1) the parent has a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child;
>
> (2) the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will continue to render the parent unable to provide for the child's needs until the 18th birthday of the child;
>
> (3) the department has been the temporary or sole managing conservator of the child of the parent for at least six months preceding the date of the hearing on the termination held [no earlier than 180 days after the date on which the termination suit was filed];
>
> (4) the department has made reasonable efforts to return the child to the parent; and
>
> (5) the termination is in the best interest of the child.

Tex. Fam. Code § 161.003(a).

Here, the record contains evidence that T.V.N. (1) is mildly mentally retarded with an IQ of 65, has brain damage from a car accident, and suffers from chronic kidney disease, diabetes, bipolar disorder, and depression; (2) has a long history of being unable to care for herself adequately, has frequently been homeless, and has generally had unstable housing; (3) has a history of failing to properly attend to her own medical needs, resulting in several hospitalizations for kidney infections; (4) often does not take medications prescribed for the treatment of her mental-health issues; (5) was unable to adequately complete the requirements of the Family Service Plan setting forth the requirements to be reunited with her child; (6) has resisted attempts to provide her with services designed to enable her to become medically compliant and obtain stable housing;

4

(7) voluntarily relinquished custody of her first-born child to her mother because she was unable to care for him; (8) does not know the whereabouts of her second child; (9) has a history of alcoholism, despite having been repeatedly counseled not to consume alcohol due to her kidney condition; (10) is susceptible to exploitation and has reported being victimized on more than one occasion; (11) has a history of unstable personal relationships, including multiple failed marriages and engagements; (12) has a criminal background that includes car theft, petty theft, public intoxication, assault, and family violence; (13) attended only a fraction of the visitations scheduled with W.V.; and (14) has been unable to maintain steady employment. *See In re C.D.*, 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 1984, no writ) (mental incompetence and mental illness alone are not grounds for termination, but when parent's mental state allows for conduct endangering to child, that conduct is relevant).

Dr. Michael E. Campbell, a psychologist who evaluated T.V.N., testified that T.V.N. is significantly impaired in her ability to take care of herself and understand a child's needs. In fact, he testified that (1) T.V.N. herself needs full-time supervision; (2) her marital status will not improve her ability to take care of herself or a child; (3) her low intellectual functioning cannot be cured by the time W.V. reaches age 18; and (4) in most cases, including T.V.N.'s, a person with an IQ of 65 would not be able to be an effective parent. He concluded that T.V.N. has a mental illness or deficiency that renders her unable to provide for W.V.'s physical, emotional, and medical needs, and that in all reasonable probability that illness or deficiency will continue to render her unable to meet those needs until W.V.'s 18th birthday. T.V.N.'s treating therapist, Rita Jenkins, agreed with Dr. Campbell's assessment.

There is also evidence that the Department made reasonable efforts to return W.V. to his mother by implementing a service plan to provide her with classes, therapy, and visitation with the child. *Cf. In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.) ("The State's preparation and administration of a service plan for the parent constitutes evidence that the State made reasonable efforts to return the child to the parent."). Although there is disputed evidence about the precise extent to which T.V.N. complied or attempted to comply with the service plan, there is no evidence that the Department impeded or undermined T.V.N.'s ability to access services or visitation.

The record contains other evidence, however, that T.V.N. had achieved a measure of stability in the months preceding the termination trial. At the time of trial, T.V.N. was newly married to her third husband. He testified that he provided her with financial support and was able to explain things to her in a way that she could understand. He disputed that T.V.N. was mentally deficient to the degree that Dr. Campbell and Ms. Jenkins had testified, and he maintained that he would be able to help T.V.N. adequately care for her child and understand his physical, emotional, and medical needs. He further testified that, with his assistance, T.V.N. had stable housing and access to medical care and was taking better care of her health issues. As a result, she had not required hospitalization since their marriage. He conceded, however, that T.V.N. relies on him to drive her places, pay the rent, provide insurance and health care, and help her understand things. He acknowledged that T.V.N. would be homeless if he did not provide for her. Both T.V.N. and her husband disputed evidence that T.V.N. was unable to maintain a home that was safe and clean, even with her husband's assistance, and offered their own evidence that they were able to address all of

6

the caseworker's cleanliness and environmental safety concerns in about one hour of cleaning and organization.

Viewing the foregoing evidence in the light most favorable to the jury's finding, as required by the applicable standard of review, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination was warranted under section 161.003(a)(1-4). *See* Tex. Fam. Code §§ 101.007, 161.003(a)(1-4); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Accordingly, we hold that the evidence is legally sufficient to support the jury's verdict as to termination. The evidence is also factually sufficient to support termination. Even crediting the disputed evidence, the jury could reasonably have formed a firm belief or conviction that T.V.N. is unable to appropriately care for W.V. due to mental illness or deficiency that, in all reasonable probability, will persist until his 18th birthday. *See* Tex. Fam. Code §§ 101.007, 161.001(1)(D)-(E); *J.F.C.*, 96 S.W.3d at 266-67; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

We now turn to the evidence supporting the jury's best-interest finding. When deciding the best-interest issue, we consider the *Holley v. Adams* factors, keeping in mind that the list is not exhaustive and that not all of the factors must be proven. *C.H.*, 89 S.W.3d at 27; *see Holley v. Adams*, 544 SW.2d 367, 371-72 (Tex. 1976).

In addition to the evidence recounted above, the jury heard evidence of the following:

- W.V. was fifteen months old at the time of trial and had been with his foster parents since he was three weeks old. He is bonded to them, and they are bonded to him and desire to adopt him. W.V.'s guardian ad litem testified that W.V. considers his foster parents to be his parents. They provide W.V. a clean and appropriate home.

7

- W.V. has significant medical and developmental needs. His foster father, a stay-at-home parent with a degree in elementary education, works with W.V.'s physical therapy needs on a daily basis. The foster mother is a nurse with a degree in child development, who participates in his medical care and developmental therapy. In comparison, T.V.N. lacks the ability to appreciate, understand, and appropriately respond to W.V.'s physical, emotional, and medical needs. Furthermore, T.V.N. lacks the ability to be an effective decisionmaker.

- T.V.N. has not been able to adequately care or provide stability for herself or her two older children.

- T.V.N. was unable or unwilling to complete services necessary to improve her parenting skills, including missing a significant number of scheduled visits with W.V., delaying and failing to complete counseling, and failing to complete her psychiatric evaluation.

- The caseworker found T.V.N.'s home at the time of W.V.'s birth to be entirely unacceptable. At that time, she was renting a room in a dilapidated house along with seven strangers. The house did not appear to have electricity. Following her recent marriage, she moved to what the caseworker considered to be a more acceptable abode, but she failed to keep it clean and safe for a child, even when given notice of a scheduled inspection. T.V.N. and her husband asserted that the home was merely a little dirty and introduced pictures showing that the caseworker's concerns about cleanliness and safety had been addressed with a minimum amount of time and attention.

- T.V.N. believes she can provide permanence and stability to W.V. because she plans to stay with her current husband, but she will move in with her mother (whom she dislikes) if the marriage fails.

- With the assistance of her new husband, T.V.N. believes she can provide W.V. stable housing and medical insurance. Following her husband's impending discharge from the military, they plan to move to the Houston area, where they would have additional family support.

Based on the evidence presented at trial, we conclude that the jury could reasonably have formed a firm belief or conviction that the termination of T.V.N.'s parental rights was in W.V.'s best interest. *See Holley*, 544 SW.2d at 372; *L.Z. v. Texas Dep't of Family & Protective Servs.*,

8

No. 03-12-00113-CV, 2012 WL 3629435, at *10-11 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (father attempted to comply with service plan but did not complete all required tasks and had history of instability, domestic violence, and criminal activity, and Department planned to have child's foster family adopt him); *see also B.D.H. v. Texas Dep't of Family & Protective Servs.*, No. 03-13-00374-CV, 2013 WL 6002856, at *4 (Tex. App.—Austin Nov. 5, 2013, pet. filed) (mem. op.) ("[I]n considering the best interests of the child, 'evidence of a recent turn-around in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the past.'") (quoting *Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.)). We hold that the evidence was legally sufficient to support the jury's best-interest finding.

In reviewing the factual sufficiency of the evidence, we have not assumed that the factfinder resolved disputed facts in favor of the finding but have instead given due consideration to evidence that the jury could reasonably have found to be clear and convincing. *J.F.C.*, 96 S.W.3d at 266. The disputed facts relate to (1) the stability T.V.N. had achieved during her relationship with her current husband and the family support he can provide, (2) the improvement in her medical care and compliance, (3) the cleanliness and safety of her current housing situation, and (4) the extent of her ability to understand and appropriately respond to W.V.'s physical, emotional, and medical needs, as well as her own. Even considering the disputed evidence, we hold that the jury could reasonably have formed a firm belief or conviction that termination of the parent-child relationship was in W.V.'s best interest. *See* Tex. Fam. Code §§ 101.007, 161.003(a)(5); *J.F.C.*, 96 S.W.3d at 266–67; *C.H.*, 89 S.W.3d at 25; *Holley*, 544 S.W.2d at 371–73.

9

Having concluded that the evidence is sufficient to support the jury's verdict, we overrule T.V.N.'s fourth appellate issue without reaching her challenges to the remaining statutory grounds for termination.

## CONCLUSION

We affirm the trial court's order of termination.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   March 27, 2014